Council, and may it please the Court, my name is Jigar Desai and I represent the Appellant Parr Electric. The Appellant asks this Court to reverse the Commission's decision and reinstate the arbitrator's decision finding that Mr. Hamm experienced two intervening accidents on April 1 and 3 while working for Henkels & McCoy, his subsequent employer. There is no dispute that Mr. Hamm experienced a right shoulder injury while working for Parr on June 16, 2014. He underwent a course of treatment, including surgery, and was paid benefits while he was off work. He was then released by his treater, Dr. Lee, to full duty work as of March 11, 2015. While we're on that point, Lee never said that he fully recovered, correct? Dr. Lee never formally placed Mr. Hamm in maximum medical care. Right. Right. Okay. But during the course of his treatment and through April 1, 2015, Mr. Hamm testified at arbitration that he had no shoulder dislocations, and there were no recommendations for additional diagnostics or surgery. His medical records through March 11, 2015, document decreased pain and improved function. Dr. Palletta, the IME doctor for Parr, also noted during his exam of February 16, 2015, that Mr. Hamm had minimal loss of range of motion, excellent strength, and good stability. All right. Then we have these April 2015 accidents, correct, to which you are obviously arguing, as the respondent did at the hearings, that it broke the chain of causal connection, right? Correct. The central issue is whether or not the April 2015 incidents constituted intervening accidents that broke the chain of causation. And Lee says no. Lee says that the claimant's injuries following the April 2015 accidents were related to the initial injury and resulting treatment, correct? That is in the record. Lee says correct. That is correct. Lee's opinion is that the dislocation episodes were the result of the prior surgery that Mr. Hamm underwent. He says it wouldn't make a difference if it occurred one month or 13 months afterwards. He still would have causally related it to the prior June 2014 accident. Okay. So that's in the record, right? Correct. Okay. But actually I want to get into another subject that I found very intriguing. If you came up with this very novel and creative argument that we don't often see or maybe have not seen before, alleging there's a conflict between the line of cases where under a pre-existing condition analysis the claimant would be able to recover if the work-related accident was a cause, not necessarily a sole or main cause, versus the language that in the pre-existing it has to completely break the chain of causation. In other words, you seem to be saying is under the intervening cause analysis the employer is relieved of liability only if the intervening accident completely breaks the chain, which is not the case with the pre-existing condition. So let's assume that you are correct in this novel theory. The thing that I can't figure out, and I've been looking and doing some research, what case law can you call our attention to that says that? Well, that's, and we point this out on page 20 of the brief, which is the line of cases that assess intervening accidents and where the holding states, quote, whether work-related or not, the language that's inserted about whether it's work-related or not is inserted in cases all involving non-work-related subsequent accidents. So in the course of our research, we weren't able to identify a case that involved a subsequent work-related accident that gave rise to the whether work-related or not language in the context of an intervening accident. But you're acknowledging right now that there is no case law to support that argument. Well, I mean, other than the long-standing proposition that the employer takes the employee as they find them, as outlined by the CISBRO line of cases over the last 50, 60 years. So how does that help you in this case on the other end of the spectrum? Because our argument is that the causation standard for some reason is flipped when we have a subsequent accident with a new employer where there's still an open workers' compensation case. For example, if Mr. Hammett injured himself at home, same fact scenario, only it's not a work-related accident initially. He injures himself at home. If he returns to work a month later, is informally at MMI, has these two throwing incidents while working for Hankel's, it's likely that the arbitrator of the commission will conclude that he experienced accidents while working for Hankel's and award compensation. But the fact that he has a prior open workers' compensation case completely flips the causation standard on its head. And now, we have to prove that our condition had absolutely no connection to the subsequent dislocation episodes, whereas... Could there be underlying policy reasons for that? In that sense, I'm not entirely sure what they would be as they're not enunciated or in any of the prior case laws what the policy considerations would be. The reason that we have the policy that the employer takes the employee as they find them is that the Workers' Compensation Act is designed to protect employees and allow them to recover even in the case of a pre-existing condition. In this case, Mr. Parr or Mr. Hamm would have still been protected by that same policy consideration as there was another employer involved who we feel is liable for the subsequent two accidents that he experienced given his pre-existing condition. You know, I have to take issue with another argument that you raised in your brief. You're reading our decision in National Freight Industries as specifically setting forth a specific test to determine whether a subsequent work-related event constitutes an independent intervening cause. How did you conclude that we set forth a specific test to be applied in these cases in National Freight? I'll acknowledge that National Freight was a decision where this Court was assessing whether or not the Commission's decision was against the manifest way of the evidence. And we were recounting, in summary, the evidence that supported the decision. Did we say that was a test for all time? No. And I think our argument today is not that it is the test or that's what an intervening subsequent work-related accident analysis should be based upon. But we do think that those four factors can be adopted and applied in subsequent cases or in this case involving subsequent work-related accidents. And Parr's argument is that the standard should be different when assessing a subsequent work-related accident in the intervening accident context versus a non-work-related accident. Well, you may argue that's a logical distinction to be drawn or a logical application that should be drawn. But again, we would have to be reaching out and really establishing a new decision, would we not? That is correct. You would. Do we want to do that? I think it would provide some clarity and more consistency when we're talking about pre-existing conditions. In the pre-existing condition line of cases, the question is whether the employment cause or contributed to the injury. If we talk about a subsequent work-related accident in the intervening accident context, the application or the law should be the same, whether the employment cause or contributed to the injury. What if the condition that was caused by the first accident put the claimant in such a physical condition that what he did at the second employer was a physical injury? And I think there are ways to address that based on the present case law in the context of a pre-existing condition context, which is, was the condition so deteriorated that any activities... Oh, no. You're missing my point. Our cases suggest that if a work-related accident puts you in such a physical condition that it contributes to a subsequent aggravation of the injury then the first employer is responsible for the subsequent aggravation. And so if this man was put in such a condition because of his first injury that contributed to the shoulder problem when he threw the article that resulted in the aggravation, then why shouldn't the first employer be liable for both? Under our cases, he would be liable. But the first employer wouldn't be liable for both, or I'm sorry, the employer wouldn't be liable for both if there was a pre-existing condition. Excuse me, the employer would be liable for both if there was a pre-existing condition. Well, in the second event, the question is, was the second event, injury to the body, in any way related to the injury suffered in the first event? Right, and I think there are ways for the Commission, if we look at the national freight factors, to analyze whether or not the first employer or the subsequent employer is responsible. Instead of creating a completely flipped causation standard, or not, instead of the current standard, which is that PAR has to prove that there is absolutely no connection between a subsequent condition and our original accident and condition, the Commission can look to factors to analyze whether or not the subsequent employer's accident is responsible or ours, namely whether the symptoms change, diagnostics change, treatment recommendations change, ability to work change. I suppose I'm not making myself real clear. The simplest case is a man's leg is injured at work, okay, and subsequently he's walking down a flight of stairs weeks after the event. And because of his weakened leg, he falls down the flight of stairs and breaks his arm. We would say that the employer is not only liable for the injury to the leg, but is also liable for the injury to the arm. Now, you're going to turn around and say, yes, but that subsequent event was not employment related, and therefore, that analysis doesn't work anymore. And my answer to you is, why not? Assume first he's injured at one employer, and he injures his leg. He goes to work for another employer, and because his leg is weak, he slips and falls, and his hand goes into a press. We're going to say the first employer is liable for the injury to the hand? Well, we would in the context of a preexisting condition. I understand what you mean, preexisting condition. And so if this person has a bad leg, and it's not due to a work-related injury. No, it is work-related. But I'm saying this is. I gave you a hypothetical where it was work-related. Right, but this is how. And then I would agree with you based on the present case law, right? But my argument is, if this person had a preexisting leg problem that was not work-related, they go to work for a new employer, and they fall because of their bad leg and injure their wrist, we would say, did the work activity cause or contribute to the substantial injury? Right? We would assess it under CISCO. I think we understand what you're saying, going around and around. But let me ask you this. In the event that we surprisingly do not accede to your novel and creative argument, based on the causal connection, opinion, and the evidence here, how do you win this case? On what basis do we reverse the commission's decision in the rare event that we do not accede to your argument? Right. We still think that the commission's decision was against the manifest way to the evidence. The nature of his symptoms changed. There was a clear change of pathology. His recommendation for surgery changed. He was referred for an additional surgery. There was a new labral tear seen. At that time, Dr. Lee performed a bicep stenodesis, which he didn't feel was indicated at the time of the initial surgery. His ability to work changed. Dr. Lee and Dr. Paletta, if you review the record, both agree that if the April 2015 throwing incidents had not occurred, Mr. Hamm would not have needed additional surgery. The commission found, per Dr. Lee's testimony, that the extension of the tear was caused by the subsequent throwing incidents, and that if Mr. Hamm did not perform those actions, per Dr. Lee, the re-dislocation probably would not have happened. Both Dr. Lee and Dr. Paletta. Would there have been a dislocation if he had no tear in the first incident? There may have been. The record supports that Mr. Hamm had a history of a prior dislocation before our work accident. Yeah, you take them as you find them. So now we're back to your novel theory. Well, but then the issue is, would the subsequent dislocation episodes have occurred but for the work accident? And our argument is, they could have very well occurred but for the work accident because he had a prior history of a dislocation. That's not what Lee said. Lee's opinion supports the causal connection. I'm not sure. I cannot recall at this time whether or not Lee was aware of the prior dislocation episode of Mr. Hamm before the June 2014 accident. Both Dr. Lee and Dr. Paletta agree that the April accidents necessitated more treatment and work restrictions, and we feel that based on this, the opposite conclusion is apparent, that Mr. Hamm's need for additional treatment was necessitated by and causally related to the April 2015 work accident. Thank you. Thank you, counsel. We have time to reply. Counsel, you may respond. Thank you. Jennifer Bonestell here for Dallas CAMP. Essentially, what is being asked of you today by Mr. Desai is to apply a standard that doesn't exist and to a set of facts that he's asking you to re-weigh. As your honor pointed out, whether or not national freight is a standard is still a question. In fact, I believe in passing, this court has said, although I don't want to cause more problems by citing an unpublished decision, but this court has said... Then don't. Then don't go there. I believe it to be, having read that decision, a recitation of the facts, not a standard. Even if the court finds that national freight is in fact a standard, a four-factor test, the outcome from the decision must still stand. And I say that because what he's asking you to do is essentially to re-weigh the evidence and to stand in the trial court's shoes. And as this court has pointed out multiple times this morning, this court will not do that. Mr. Desai's brief, he says in his response brief, I should say, on page five, Dr. Lee is not credible. That is not a question for the court. This court's decision is whether or not there is any basis for reaffirming or affirming the... Actually, it's sufficient basis. Sufficient basis. Be careful on that. Thank you, your honor. Even if this court were to find that it could stand in the shoes of, in the shoes of judge credibility, in the shoes of the commission and the trial court, the facts show that this case is in fact similar to Vogel and not to the case decided by defendant, appellant, I apologize, your honors. There is not a requirement, as Mr. Desai points out in his brief, that MMI must be reached. But Dr. Lee is the doctor, not me, not Mr. Desai, not the commission, and not the trial court, not the arbitrator. He testified that he believed his surgery failed. He testified that even that he had not released Mr. Hamm from care as of yet. And I assume that's because he knows that on returning to work or daily activities that Mr. Hamm is likely, he's likely to find out whether or not Mr. Hamm is injured. You asked before, your honor, if there were underlying policy reasons for your previous decisions. And I believe that... And I related just to clarify, you know, he says it seems, in essence his argument seems unfair that it only has to be a factor to hold the first employer liable. So why, if it also actually caused additional injury subsequent, why shouldn't that break the chain? Why shouldn't we apply the A cause, you know, to both? So are there policy reasons why we don't do that? Yes, your honor, and let me address your first point, which is that sometimes the law is unfair. And in this case, that may be, unfortunately, one of the side effects of having this policy in place. You don't want us to announce in a written decision that sometimes the law is unfair and that's okay. I would not... I don't think I want a decision, your honor. But the point is, there may be a policy reason for that, and that is simply the fact that we do not know, as a person goes on, surgeries do fail. There are intervening accidents. There are reasons why we hold the employer responsible from the very beginning, and it's because we do not know, at the time he is either released at MMI or not released in this case, whether or not that surgery is going to hold. And what happens is, Dr. Lee testifies and he opines that that surgery did fail, that he had hoped to release Mr. Hamm, but until Mr. Hamm is sort of back to some activities, he doesn't know. And it would be unfair to let the employer off the hook for something that goes back to the original surgery. I believe the court in Vogel says the surgery failed due to a new accident, but the surgery was necessitated by the original accident. And so Vogel, the court in Vogel, holds that essentially that's why we bring it back for policy reasons to that original employer. I believe that the subsequent events, I believe that the court can determine for itself whether or not there's a basis for this, but the commission held and the tribal held that the subsequent events actually, even though they were intervening, were originally caused by that surgery failing. And if that surgery, if those accidents had occurred without that surgery, it probably would not have necessitated another surgery. In other words, throwing a bar of heavy tape wouldn't necessarily cause an extension of a rotator cuff tear, which is what the surgery was on originally. So I would ask that the court just affirm the opinion of the commission. Thank you, Counsel. Counsel, you may reply. And raise a hypothetical to, I guess, illuminate our point, which is if Mr. Hamm, as he did, injured his shoulder, and then was released to full-duty work and settled his case with par on settlement contracts, and then returned to Hankles under the same timeline and had these throwing incidents, Hankles likely wouldn't have been able to argue in their defense that but for this prior work accident, this subsequent one wouldn't have occurred, because it's not, that's not a valid argument to argue that this was not an intervening accident. He would be alleging that these are new accidents while working for Hankles and file a new application for benefits, and Mr. Hamm would have no recourse against par because he'd settled this case. And that's why we think that the intervening accident analysis in the context of a subsequent work-related accident has a causation standard that's inconsistent with the standard used in preexisting degenerative condition cases such as CISPRO. What are you arguing for, apportionment? Well, no, because... Is that your argument? No, we don't... Well, you shouldn't have to pay anything. Well, we think that there's still a permanency... The only way you get out of paying something is superseding intervening cause. In the absence of superseding intervening cause, one of two things happens. Either you get stuck with the whole thing, if you're the first one to go to trial, or you're advocating for apportionment. Apportionment is not the one and only. No, I agree with you. And I think what we are advocating for is that we are not on the hook for TTD benefits and medical benefits after these subsequent intervening accidents, but there would still be a... There could still be a determination as to permanent partial disability against par for the initial accident. Thank you. Thank you, counsel, both for your arguments in this matter of the technical advisement. And this is a conditional issue. The court is going to debrief you.